**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**INTENSEYE, INC.** **PLAINTIFF**

**v.** **CASE NO. 4:26-CV-00773-BSM**

**ROBERT BARNETT, *et al.*** **DEFENDANTS**

**ORDER**

Defendants' motion to dismiss [Doc. No. 21] is denied because the complaint sufficiently alleges claims against defendants.

I. BACKGROUND

Viewing the complaint in the light most favorable to Intenseye, Inc., the facts are as follows.

Intenseye specializes in computer vision and artificial intelligence workplace safety products. Compl., ¶ 9, Doc. No. 1. Intenseye hired Robert Barnett as an account executive, and he signed an employment contract that included non-solicitation and non-compete agreements. *Id*. ¶¶ 14–15, 19–20. The non-solicitation agreement restricts Barnett, for two years, from soliciting customers or business relationships from customers with whom he had personal contact while working for Intenseye. *Id.* ¶ 21. The non-compete agreement prohibits Barnett from working for a competitor of Intenseye for one year. *Id.* ¶ 19.

Barnett had access to Intenseye customer information, account data, pricing information, and sales strategies stored in Intenseye's secure customer relationship management system. *Id.* ¶¶ 16–17. On two occasions, Intenseye's system identified suspicious login activity from Barnett's account which triggered automatic security freezes.

Compl. ¶¶ 30–31. One of those occasions was near the last day of his employment with Intenseye, and the other occurred on his last day. *Id.* ¶¶ 30–31.

Barnett left Intenseye and began working for its competitor, Dragonfruit AI, Inc. *Id.* ¶¶ 27–29. Soon thereafter, Barnett emailed a company he worked with when he was employed at Intenseye. *Id.* ¶¶ 34–38. Barnett offered to help the company "explore different capabilities" and noted that Dragonfruit's products would be a "great fit" for the company. *Id.* ¶ 35. Intenseye believes Barnett used stolen contact information to solicit the company. *Id.* ¶ 37.

Intenseye is suing Barnett for (1) breach of contract; (2) breach of the duty of loyalty; (3) trade secrets misappropriation; (4) unjust enrichment; and (5) civil conspiracy. Intenseye is suing Dragonfruit for (1) tortious interference with a business expectancy; (2) trade secrets misappropriation; (3) unjust enrichment; and (4) civil conspiracy. Intenseye also seeks injunctive relief. Defendants move to dismiss.

## II. LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient facts which, if accepted as true, state a claim for relief that is plausible on its face. *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the plaintiff pleads factual content that would allow a court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Although detailed factual allegations are not required, threadbare recitals of a cause of action, supported by mere conclusory statements, are insufficient. *Id.* In ruling on a 12(b)(6) motion to dismiss,

materials embraced by the pleadings, as well as exhibits attached to the pleadings and matters of public record, may all be considered. *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010).

## III. DISCUSSION

Defendants' motion to dismiss is denied.

### A. Local Rule 7.2(e)

Intenseye's request to deny defendants' motion because they failed to file a separate brief in support of their motion, as required by Local Rule 7.2(e), is denied because Intenseye was not prejudiced by this. *See Braxton v. Bi-State Dev. Agency*, 728 F.2d 1105, 1107 (8th Cir. 1984) (courts have discretion regarding departures from local rules).

### B. Breach of Contract

Defendants' motion to dismiss Intenseye's claim for breach of the non-solicitation and non-compete agreements is denied because Intenseye has pled the elements necessary to state a claim as to both agreements. To establish these claims, Intenseye must plead four elements: (1) a contract between Intenseye and Barnett existed; (2) Barnett had an obligation under the contract; (3) Barnett breached the contract; and (4) damages resulted from the breach. *Perry v. Baptist Health*, 189 S.W.3d 54, 58 (Ark. 2004).

As to the non-solicitation agreement, the complaint alleges that there was a contract; the contract restricted Barnett, for two years, from soliciting those with whom he had a business relationship while employed at Intenseye; Barnett breached the contract when he solicited a prospective Intenseye customer with whom he had a business relationship; and

Intenseye has lost customer relationships and revenue as a result of Barnett's breach. Compl. ¶¶ 51, 54–55, 57. Regarding the non-compete agreement, the complaint alleges that there was a contract; the contract prohibited Barnett from working for a competitor of Intenseye for a year; Barnett breached the contract when he left Intenseye and immediately started working at Dragonfruit, a competitor; and Intenseye has lost value. *Id.* ¶¶ 60–65.

Defendants argue that dismissal is appropriate because the non-compete and non-solicitation agreements are unenforceable. Whether a restrictive covenant is enforceable involves fact-intensive inquiries that are not appropriate at the motion to dismiss stage. *See Core & Main, LP v. McCabe*, 62 F.4th 414, 417, 419 (8th Cir. 2023) (finding the question of whether the parole evidence rule bars a non-compete agreement cannot be decided on the pleadings); *see also Optical Partners, Inc. v. Dang*, 381 S.W.3d 46, 54 (Ark. 2011) ("[W]hether a restrictive covenant is reasonable or unreasonable is a matter to be determined under the particular circumstances involved."). Further, if the covenants are unenforceable, the proper remedy is reformation, not dismissal. Ark. Code Ann. § 4-75-101(f).

C. Breach of Duty of Loyalty

The motion to dismiss the breach of the duty of loyalty claim is denied. Defendants cite *Vigoro Indus. v. Crisp*, 82 F.3d 785, 788 (8th Cir. 1996) for the proposition that the duty of loyalty exists only for corporate officers and directors, not "less essential employees." Defs.' Mot. Dismiss at 20, Doc. No. 21. *Vigoro Industries*, however, did not foreclose a fiduciary duty of loyalty for employees. It merely held that the duty of loyalty remains after employment ends if there is a non-compete agreement. Indeed, in that case, the defendant

was found to have breached the duty of loyalty despite being a lower level employee. *Vigoro Indus.*, 82 F.3d at 789. Further, *Vigoro Industries* still assigned fiduciary duties to employees, it just specified that those duties are less than the duties owed by officers and directors. *Id.* at 788.

Intenseye's breach of the fiduciary duty of loyalty claim survives dismissal because the complaint alleges that Barnett's non-compete agreement remained in effect after his employment concluded, Barnett took Intenseye's proprietary information while he was employed at Intenseye, and Barnett used it to benefit himself and Dragonfruit. Compl. ¶ 68.

D. Tortious Interference with Business Expectancy

The motion to dismiss the tortious interference claim is denied. To establish a tortious interference with business expectancy claim, Intenseye must allege (1) that a valid contractual relationship or business expectancy exists; (2) that the interfering party knows of the relationship or expectancy; (3) that the intentional interference caused a breach or termination of the relationship or expectancy; (4) damages; and (5) that the interference was improper. *Ballard Grp., Inc. v. BP Lubricants USA, Inc.*, 436 S.W.3d 445, 454 (Ark. 2014). Contrary to defendants' briefing, Arizona law does not control tortious interference claims in Arkansas. Defs.' Mot. Dismiss at 23–24, Doc. No. 21. Defendants argue that because Intenseye used the term "prospects" in the complaint, it could not have pled a tortious interference claim. This argument is unconvincing because it does not address the facts underlying Intenseye's claim. The complaint alleges that Intenseye had a business expectancy with the company Barnett tried to solicit for Dragonfruit because Barnett's

relationship with that company was more than that of a "prospect." In support of this claim, the complaint alleges that Barnett had extensive contact with the company while he worked at Intenseye. Compl. ¶ 72. The complaint also alleges Dragonfruit knew of the expectancy when Barnett's email, from a Dragonfruit email account, identified the contact as one he knew from his time at Intenseye. *Id.* ¶¶ 34–36, 74. Intenseye alleges Barnett and Dragonfruit intentionally interfered by contacting the customer, damages resulted from the harm done to Intenseye's business relationship with the customer, and the interference was improper because it violated the non-soliciation agreement. *Id.* ¶¶ 72–79.

F. <u>Defend Trade Secrets Act</u>

The motion to dismiss the Defend Trade Secrets Act, 18 U.S.C. section 1836, ("DTSA") claim is denied. To make out a claim under the DTSA, Intenseye must show (1) a protectable trade secret, (2) misappropriation of the trade secret, and (3) damages. *Ahern Rentrals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 955 (8th Cir. 2023) (citing *MPAY Inc. v. Erie Custom Comput. Applications, Inc.*, 970 F.3d 1010, 1016 (8th Cir. 2020)). The DTSA defines "trade secret" broadly, covering any business information that (1) the owner has taken reasonable measures to keep secret and (2) derives independent economic value from not being generally known and not readily ascertainable through proper means. 18 U.S.C. § 1839(3).

Intenseye alleges a protectable trade secret in its "customer and prospect records, contact information, account and opportunity data, pricing, and sales strategies." Compl. ¶ 89. Intenseye alleges that it kept this information secret using a secure system that requires

employee logins and detects suspicious activity. *Id.* ¶ 90. Intenseye argues that it demonstrated this information has independent economic value from its secrecy because Barnett used this confidential information to solicit a business contact that he developed while working at Intenseye. *Id.* ¶¶ 34–38.

Defendants' reliance on *Wilbur-Ellis v. Gompert*, 181 F.4th 816, 825, 827 (8th Cir. 2026) is misplaced because that case dealt with discovery disputes and summary judgment. In discovery and at the summary judgment stage, the misappropriated trade secrets must be described with particularity, but that is a higher standard than the standard that must be met to overcome a motion to dismiss. *Id.* at 825 ("[T]he pleading requirement for overcoming a motion to dismiss . . . is a far lower burden than that required . . . for overturning a discovery order.") (citing *Ahern*, 59 F.4th at 953) (citation modified). Intenseye pled enough to state a claim under the DTSA.

E. Arkansas Trade Secrets Act

The motion to dismiss the Arkansas Trade Secrets Act, Ark. Code Ann. section 4-75-604, ("ATSA") claim is denied. The ATSA prohibits the misappropriation of trade secrets. Ark. Code Ann. § 4-75-604. "Trade secret," "misappropriation," and "improper means" under the ATSA are "functionally identical" to their definitions in the DTSA. *Triosim Corp. v. Young*, 2026 WL 1831648 at *6 (W.D. Ark. June 25, 2026); *Pitts v. Fire Extinguisher Sales & Servs. of Arkansas LLC*, 2021 WL 2547796 at *6 (E.D. Ark. May 17, 2021). In addition to the definitions in the ATSA, Arkansas courts also use six factors to determine the existence of a trade secret: "(1) the extent to which the information is known outside the

business; (2) the extent to which the information is known by employees and others involved in the business; (3) the extent of measures taken by appellee to guard the secrecy of the information; (4) the value of the information to appellee and to its competitors; (5) the amount of effort or money expended by appellee in developing the information; and, (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." *Wal-Mart Stores v. P.O. Mkt.*, 66 S.W.3d 620, 630 (Ark. 2002).

Intenseye alleges that its proprietary information is not known outside of the business and is not widely available within the business because members of the sales team must access it using personalized credentials. Compl. ¶¶ 23, 31–33. Intenseye alleges that it has security measures in place to protect its proprietary information. *Id.* ¶ 31. Intenseye further alleges that the information is valuable, evidenced by Barnett's misuse of the information to solicit a business relationship for Dragonfruit. *Id.* ¶¶ 34–37. Viewing these factors and the complaint in the light most favorable to Intenseye, it has sufficiently pled misappropriation of trade secrets under the ATSA.

Further, Intenseye's tort claims are not barred just because there are claims under the ATSA. *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.").

G. Unjust Enrichment

The motion to dismiss the unjust enrichment claim is denied. Defendants' reliance on *Philip Morris, Inc.* is unpersuasive because Arizona law does not govern Arkansas tort

claims. *Laborers' & Operating Eng'rs' Util. Agreement Health & Welfare Trust Fund v. Philip Morris, Inc.*, 42 F. Supp. 2d 943, 943 (D. Ariz. 1999); Defs.' Mot. Dismiss at 25–26. To plead unjust enrichment, Intenseye must show that Barnett "received something of value" he was not entitled to receive or that he should restore. *R.K. Enters., LLC v. Pro-Comp Mgmt.*, 272 S.W.3d 85, 89 (Ark. 2008) (citation modified). Intenseye alleges that Barnett received Intenseye's proprietary information and has retained and used it to benefit himself and Dragonfruit. Compl. ¶¶ 98–99. Intenseye also alleges Barnett and Dragonfruit should restore the information because they are using it to compete with Intenseye and solicit its customers and prospects. *Id.* ¶¶ 99–100. The complaint bolsters this claim by alleging Barnett retained an Intenseye business relationship's contact information and reached out to him for Dragonfruit. *Id.* ¶¶ 44–45. This is sufficient to state a claim for unjust enrichment.

Further, the existence of a contract does not automatically preclude an unjust enrichment claim at the motion to dismiss stage. *Campbell v. Asbury Auto., Inc.*, 381 S.W.3d 21, 37 (Ark. 2011). This, however, may be taken up at the summary judgment stage.

H. Civil Conspiracy

The motion to dismiss the civil conspiracy claim is denied. Civil conspiracy involves a combination of two or more persons acting to accomplish a purpose that is oppressive or unlawful or using unlawful, oppressive, or immoral means to injure another. *Born v. Hosto & Buchan, PLLC*, 372 S.W.3d 324, 331 (Ark. 2010). Defendants contend that the civil conspiracy claim must be dismissed because it is barred by the intra-corporate conspiracy doctrine and Arkansas does not allow civil conspiracy based on breach of contract. Defs.'

Mot. Dismiss at 26–27.

Defendants, however, point to no Arkansas case law showing that Arkansas has adopted the intra-corporate conspiracy doctrine. Defs.' Mot. Dismiss at 26 (citing *Larson by Larson v. Miller*, 76 F.3d 1446. 1456 n. 6 (8th Cir. 1996) (finding the doctrine applies in Nebraska state civil conspiracy claims); *Colonia Ins. Co. v. City Nat. Bank*, 988 F. Supp. 1242, 1250 (W.D. Ark. 1997) (applying the doctrine to an Arkansas state civil conspiracy case but citing to no Arkansas law); *Pink Supply Corp. v. Hiebert, Inc.*, 788 F.2d 1313, 1317 (8th Cir. 1986) (applying the doctrine in a case under the Sherman Act, a federal law); *Johnson v. Dep't of Agric.*, 833 F.3d 948, 958 (8th Cir. 2016) (applying the doctrine to a case brought under 42 U.S.C. section 1985, a federal law)). Further, the request to dismiss this claim because it is predicated on breach of contract is denied because Intenseye's other claims survive. *See* Fed. R. Civ. P. 8(d)(2).

I. Injunctive Relief

Intenseye's request for injunctive relief survives because its underlying claims remain active. *See* Ark. Code Ann. § 4-75-101(e)(2).

## IV. CONCLUSION

For these reasons, defendants' motion to dismiss is denied.

IT IS SO ORDERED this 14th day of October, 2026.

Brian S. Miller

UNITED STATES DISTRICT JUDGE